IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Northern Division)

| | | |
|---|---|---|
| OT, LLC, *et al.*, | * | |
| Plaintiffs, | * | |
| v. | * | Case No.: GLR-17-2812 |
| HARFORD COUNTY, MARYLAND, *et al.*, | * | |
| Defendants. | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

| | |
|---|---|
| BARRY GLASSMAN, *et al.*, | * |
| Defendants/Third-Party Plaintiffs | * |
| v. | * |
| WILLIAM LUTHER, | * |
| Third-Party Defendant. | * |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

**MEMORANDUM OF LAW IN SUPPORT OF**
**MOTION TO DISMISS THIRD-PARTY COMPLAINT**

Jeffrey H. Scherr (Bar No.: 01011)
David J. Shuster (Bar No.: 23120)
Ryan A. Mitchell (Bar No.: 29151)
Justin A. Redd (Bar No.: 18614)
KRAMON & GRAHAM, P.A.
One South Street, Suite 2600
Baltimore, Maryland 21202
(410) 752-6030
(410) 539-1269 (fax)
jscherr@kg-law.com
dshuster@kg-law.com
rmitchell@kg-law.com
jredd@kg-law.com

*Attorneys for Third-Party Defendant*
*William R. Luther, Jr.*

**TABLE OF CONTENTS**

I.      INTRODUCTION ........................................................................................................1

II.     FACTUAL BACKGROUND .......................................................................................1

        A.      The Underlying Action Against the County Defendants ........................................1

        B.      Mr. Luther's Statements ........................................................................................2

III.    STANDARD ON MOTION TO DISMISS ...................................................................5

IV.     APPLICABLE LEGAL PRINCIPLES OF THE LAW OF DEFAMATION ...................6

        A.      Elements of a Defamation Claim............................................................................6

        B.      Privilege ................................................................................................................7

V.      ARGUMENT ..............................................................................................................8

        A.      Mr. Luther's statements are not actionable as defamation ......................................9

                1.      The Public Officials' defamation claim is barred by the First Amendment
                        of the United States Constitution and by Article 40 of the Maryland
                        Declaration of Rights ...............................................................................9

                2.      Mr. Luther's statement during the radio broadcast is not actionable because
                        it is objectively true as a matter of law. ...................................................11

                3.      Mr. Luther's statements in the newspaper article are non-actionable
                        opinion. .................................................................................................12

                4.      The Public Officials have failed to satisfy the onerous pleading standard
                        that applies to public figures. .................................................................13

        B.      The absolute litigation privilege bars the Public Officials' claims ........................16

        C.      Conditional privileges bar the Public Officials' defamation claim ........................19

        D.      The Public Officials' claim for punitive damages fails as a matter of law ...........23

VI.     CONCLUSION...........................................................................................................24

Third-Party Defendant William Luther, through his counsel, submits this Memorandum of Law in Support of his Motion to Dismiss Third-Party Complaint (ECF No. 26) filed by Defendants Barry Glassman, Billy Boniface, Melissa Lambert, and Joseph J. Siemek (collectively "Public Officials").  The Third-Party Complaint should be dismissed for failure to state a claim on which relief can be granted under Rules 12(b)(6) and 14(a)(2) of the Federal Rules of Civil Procedure.

## I.     INTRODUCTION

In response to the complaint against them in this action, the Public Officials have retaliated with a baseless defamation complaint against Mr. Luther, the principal of Plaintiffs OT, LLC ("OT") and Gemcraft Homes, Inc. ("Gemcraft").  For numerous reasons, Mr. Luther's statements of opinion in response to discriminatory conduct by Harford County and its officials are not actionable.  The statements at issue are attached as *Exhibits 1 & 2*.  The statements are not defamatory and Mr. Luther had every right to say what he said.  As a matter of law, the defamation complaint fails to state a viable claim for relief.  This Court should, therefore, dismiss the third-party complaint.

## II.    FACTUAL BACKGROUND

### A.     The Underlying Action Against the County Defendants

On September 21, 2017, OT and Gemcraft filed a multi-count complaint (ECF No. 1) against Harford County, the four Harford County Public Officials, and two Maryland State Delegates.  In detail, that complaint alleges that the defendants conspired to take unlawful and discriminatory action against OT and Gemcraft in connection with a residential construction project.  *Id.*  In addition to the complaint, OT and Gemcraft filed a motion for a preliminary injunction (ECF No. 19, filed on October 10, 2017).  Both papers (the complaint and motion for

1

a preliminary injunction) describe in detail the discriminatory and unlawful conduct of the defendants.

The defendants' unconstitutional and unlawful conduct, and this litigation itself, has received significant media attention and has been the subject of intense (and, in many instances, hateful) commentary on social media. *See Exhibit 3*, Alison Knezevich, *State Lawmakers Seek Review of Harford County Project*, Baltimore Sun (Sept. 18, 2017); *Exhibit 4*, Editorial, *The Cost of Demagoguery in* Harford, Baltimore Sun (Sept. 25, 2017); *Exhibit 5*, Excerpts from Joppatowne Community Facebook Page (Oct. 8, 2017); *Exhibit 6*, Excerpts from Joppatowne Community Facebook Page (Oct. 28, 2017); *Exhibit 7*, Excerpts from Jorge and Gina Real Estate Sales Associates/Pimentel Group Facebook Page (Sept. 25, 2017 and Oct. 28, 2017).

Additionally, since the summer of 2017, there have been multiple town-hall style community meetings, where members of the public and state and local officials have publicly debated, discussed, and voiced an array of opinions and concerns about the project. *See, e.g.*, *Exhibit 8*, David Anderson, *Muslim Leader Refutes Concerns, Vows Joppatowne Houses Will Be Open to All*, The Aegis (Sept. 27, 2017); *Exhibit 9*, David Anderson, *Builder Committed To Finishing 'Muslim' Development in Joppatowne*, The Aegis (Oct. 25, 2017). Those meetings continue on a weekly basis.[1]  *Exhibit 10*, Alison Knezevich, *Muslim Group Works To Ease Concerns About Joppatowne Housing Development*, Baltimore Sun (Oct. 7, 2017).

### B.    Mr. Luther's Statements

The third-party complaint for defamation against Mr. Luther correctly identifies him as the CEO of Gemcraft and Managing Member of OT.  *See* Third-Party Complaint (ECF No. 26)

---

[1] To the extent any of these facts are not already alleged in the complaint or evidence of those facts is not cited in the motion for preliminary injunction, the Court may take judicial notice of these matters of public record.  Fed. R. Evid. 201.

at ¶ 1.  According to the third-party complaint, on October 19, 2017, Mr. Luther appeared as a guest on the C4 Show (ECF No. 26 at ¶ 2), which is a daytime political talk radio program on WBAL Radio.  In paragraph 3 of their third-party defamation complaint, the Public Officials allege:

> While an on-air guest, Mr. Luther accused Third-Party Plaintiffs of "discrimination against people of the Islamic faith." This statement is defamatory in tending to injure Third-Party Plaintiffs in their profession and employment, and further, in impugning them to be religiously prejudiced and bigoted.

*Id.* at ¶ 3.

Tellingly, in their defamation complaint, the Public Officials did not set forth a complete and accurate quotation from the radio interview.  The full exchange from the radio interview is as follows:

> HOST: Is there any legal action that you might be considering or the other folks that are behind this considering in this effort, Bill?
>
> BILL LUTHER: Absolutely.  I filed a Federal lawsuit and I've also filed an injunction in Federal Court to have this matter heard so these folks can move in their houses and we can get this project moving forward.
>
> HOST: And what are you alleging in your suit?
>
> BILL LUTHER: Well, the suit is certainly public knowledge and we're alleging, you know, that they have, you know, per the suit that they've obstructed business by, you know, pretty much shutting it down, running up dollars and, you know, there's been discrimination per the suit due to the folks being there are of the Islamic faith.

*Exhibit 1*, The C4 Show on WBAL Radio, October 19, 2017, Transcript at 10 (the "Radio Statement").[2]

---

[2] Because the radio interview and newspaper article, *Exhibit 2*, *infra*, are referred to in, and integral to, the defamation claims presented in the third-party complaint, this Court may and should consider the complete excerpts.  In so doing, this motion to dismiss should not be converted to a motion for summary judgment.  *See, e.g.*, *Bourgeois v. Live Nation Entertainment*,

Next, according to their third-party complaint against Mr. Luther, the Public Officials allege:

> In an October 24, 2017 story, Mr. Luther told the *Washington Post*, "'I've never seen such discrimination,' he said. 'It's sickening. I don't know what the heck they are doing.'" This statement is defamatory in tending to injure Third-Party Plaintiffs in their profession and employment, and further, in impugning them to be prejudiced and bigoted.

ECF No. 26 at ¶ 4.

As they did with the radio interview, the Public Officials failed to set forth the entirety of the relevant excerpt from the *Washington Post* article. That article reported on "[d]ueling legal complaints," *i.e.*, OT's and Gemcraft's complaint in this Court, and two complaints filed by two different citizens against OT in the Department of Housing and Urban Development. *See Exhibit 2*, Justin Wm. Moyer, *Maryland Development Under Fire After Selling Homes Only to Muslims*, Washington Post (Oct. 24, 2017). In discussing a question that a member of the public asked during one of the community meetings, the article reads:

> That question is part of a lawsuit that Gemcraft Homes chief executive Bill Luther, the developer[3] who worked with [Dr. Faheem] Younus, filed last month in U.S. District Court in Maryland against Harford County officials. It alleges the county stopped issuing building permits for River Run, halting construction and complicating the sale of existing homes purchased by Muslims.

> The suit alleges the county's delay is "motivated by racial and religious animus to keep members of the Islamic faith from purchasing lots and exercising their religious freedoms."

---

*Inc.*, 3 F. Supp. 3d 423, 436 (D. Md. 2014) (although the plaintiff's complaint purported to describe the terms of a contractual document, the document was not an exhibit to the complaint; in adjudicating the defendant's motion to dismiss, which did attach the entire document, the Court considered the document even though the document was not appended to the complaint).

[3] The article, and the host of the radio show, incorrectly identified Mr. Luther as the "developer." Neither he nor his companies is the developer of this project.

Harford County officials declined to comment, citing the pending litigation, but told the Baltimore Sun last month that the project is being treated like any other and permits are on hold until issues such as storm water management are resolved.  [Defendant Delegate Richard K.] Impallaria, a defendant in the suit, likened Younus's outreach to a bank robber who claims he is just "an inexperienced person who filled out a withdrawal slip wrong."

Luther, who lives in Harford County, disagreed.  Walking through River Run — much of it still a construction site strewn with earth-moving equipment, stacks of plywood and piles of I-beams — Luther said he is more like a grocer with a "a case of Cokes" who sells them to the first people in line, no matter who they are.

The county's delays put the future of the project in doubt, Luther said.  He has $5 million tied up in River Run, subcontractors who can't work and people who bought homes they can't move into.

"I've never seen such discrimination," he said. "It's sickening.  I don't know what the heck they are doing."

*Id.* at 3–4 (the "Newspaper Statement").[4]

On the very same day that the above article appeared in the *Washington Post*, the Public Officials (through their counsel, a lawyer in the Harford County Law Department), filed the defamation claim against Mr. Luther.  Each Public Official alleges that his or her character and reputation was harmed and seeks $1,000,000 in compensatory and punitive damages.  *See* ECF No. 26 at pp. 2-3.

## III.   STANDARD ON MOTION TO DISMISS

Under Rule 12(b)(6), this Court should dismiss a complaint that fails to state a claim upon which relief can be granted.  *See also* Fed. R. Civ. P. 14(a)(2) (a third-party defendant "must assert

---

[4] Also available at https://www.washingtonpost.com/local/maryland-development-under-fire-after-only-selling-homes-to-muslims/2017/10/24/4cb3dfbe-aece-11e7-add3-da4b781e34b1_story.html?hpid=hp_local-news_muslimhousing-1235pm%3Ahomepage%2Fstory&utm_term=.4af35202a401#comments (with 722 comments as of Nov. 4, 2017).

any defense against the third-party plaintiff's claim under Rule 12").  A complaint should be

dismissed when it fails to meet the now-familiar plausibility standard set forth in *Bell Atlantic Corp.*

*v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

On a motion to dismiss, the Court is "not bound to accept as true a legal conclusion couched

as a factual allegation," and the Court will grant a Rule 12(b)(6) motion if the "well-pleaded facts do

not permit the court to infer more than the mere possibility of misconduct." *Iqbal*, 556 U.S. at 678-

79 (quoting *Twombly*, 550 U.S. at 555).  "Well-pleaded" means "factual allegations" that "must be

enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

"Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements,

do not suffice." *Iqbal*, 556 U.S. at 678-79 (citing *Twombly*, 550 U.S. at 555 ("[A] plaintiff's

obligation to provide the 'grounds' of his 'entitle[ment] to relief requires more than labels and

conclusions, and a formulaic recitation of a cause of action's elements will not do.'")).

## IV.    APPLICABLE LEGAL PRINCIPLES OF THE LAW OF DEFAMATION

### A.    Elements of a Defamation Claim

To properly plead a *prima facie* defamation claim under Maryland law, a plaintiff who is

a public figure must allege specific facts establishing four elements:

> (1) that the defendant made a defamatory and false statement,
> (2) of and concerning the plaintiff, published to a third person,
> (3) that the defendant acted with actual malice, and
> (4) that the plaintiff thereby suffered harm.

*Freyd v. Whitfield*, 972 F. Supp. 940, 943 (D. Md. 1997).  These elements must be proven by

clear and convincing evidence.  *Batson v. Shiflett*, 325 Md. 684, 722, 602 A.2d 1191, 1210

(1992).

A "defamatory statement" is one that tends to expose a person to "'public scorn, hatred,

contempt, or ridicule,'" which, as a consequence, discourages "'others in the community from

having a good opinion of, or associating with, that person.'" *Id.* at 722-23, 602 A.2d at 1210.  A "false" statement is one "that is not substantially correct." *Id.* at 726, 602 A.2d at 1212.

The degree of fault (*mens rea*) that a plaintiff must show is a function of the plaintiff's status as either a private person or public figure.  For a private person, a showing of negligence by a preponderance of the evidence is required.  *Shapiro v. Massengill*, 105 Md. App. 743, 772-73, 661 A.2d 202, 217 (1995).  A public figure, however, must show actual malice (also known as constitutional malice) by clear and convincing evidence.  *Capital-Gazette Newspapers, Inc. v. Stack*, 293 Md. 528, 445 A.2d 1038 (1982).[5]

As to the required showing of harm, courts recognize that certain statements are inherently damaging (defamation *per se*) such that harm is presumed.  *Shapiro*, 105 Md. App. at 773, 661 A.2d at 217 (citing *Metromedia, Inc. v. Hillman*, 285 Md. 161, 163-64, 400 A.2d 1117 (1979)).  On the other hand, defamation by insinuation (defamation *per quod*) requires extrinsic evidence of how the statement was understood by third persons, and accordingly requires proof of special damages.  *Id.*

**B.**      **Privilege**

A defendant is entitled to a dismissal "'when the face of the complaint clearly reveals the existence of a meritorious affirmative defense'" of privilege.  *Micrins Surgical, Inc. v.*

---

[5] As to the status of the speaker of the allegedly defamatory statement, "the law generally treats journalists and non-journalists alike in the context of defamation actions." *Rosenberg v. Helinski*, 328 Md. 664, 680, 616 A.2d 866, 874 (1992) (citing, among other authority, *Dun & Bradstreet, Inc. v. Greenmoss Builders*, 472 U.S. 749, 773 (1985) (White, J., concurring) (First Amendment gives no more protection to the press than it does to others exercising their freedom of speech)).

*Neuroregen, LLC*, No. CCB-04-152, 2004 WL 1697837, at *5 (D. Md. July 29, 2004) (quoting *E. Shore Markets, Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 185 (4th Cir. 2000)).[6]

A privilege may be absolute or qualified:  "'An absolute privilege is distinguished from a qualified privilege in that the former provides immunity regardless of the purpose or motive of the defendant, or the reasonableness of his conduct, while the latter is conditioned upon the absence of malice and is forfeited if it is abused.'"  *Smith v. Danielczyk*, 400 Md. 98, 117, 928 A.2d 795, 806 (2007) (quoting *Di Blasio v. Kolodner*, 233 Md. 512, 522, 197 A.2d 245, 250 (1964)).  The existence and application of a privilege is a question of law for the court. *Seneschal v. AM Broadband, LLC*, No. CCB-08-2171, 2010 WL 3522436, at *11 (D. Md. Sept. 8, 2010).[7]

## V.    ARGUMENT

This Court should dismiss the third-party defamation claim because, as a matter of law, none of Mr. Luther's statements is actionable by the Public Officials.  Moreover, the Public Officials have not met their onerous pleading standard (applicable to public figures) of alleging, plausibly, actual malice by clear and convincing evidence.  And, as a matter of law, absolute and conditional privileges apply to all of Mr. Luther's statements and, therefore, no viable defamation

---

[6] This Court in *Micrins Surgical, Inc.* applied Illinois defamation law, but the Court's ability to decide an affirmative defense on a motion to dismiss was based on Fourth Circuit precedent. 2004 WL 1697837, at *5 (citing *E. Shore Mkts., Inc.*, 213 F.3d at 185).

[7] Whether a speaker abused a conditional privilege and is therefore not entitled to that defense, may be a factual question.  *Bharadwaia v. O'Malley*, No. RDB-04–3826, 2006 WL 2811257, at *14 (D. Md. Sept. 27, 2006) (applying Maryland law and recognizing that abuse of conditional privilege is ordinarily a fact question, but deciding as a matter of law that summary judgment on privilege was proper), *aff'd*, 2007 WL 1578173 (4th Cir. 2007).  However, to the extent such abuse is alleged in a complaint, those allegations must meet the applicable standard to survive a motion to dismiss.  *Micrins Surgical, Inc.*, 2004 WL 1697837, at *5 (dismissing claims where "all of the statements made by [defendants] are conditionally privileged under Illinois law, and Micrins has not pled any facts suggesting that [defendant] forfeited this privilege").

claim can be sustained against him.  Consequently, for numerous reasons, the Public Officials have not stated a viable defamation claim.

    **A.**    <u>Mr. Luther's statements are not actionable as defamation.</u>

        **1.**    **The Public Officials' defamation claim is barred by the First Amendment of the United States Constitution and by Article 40 of the <u>Maryland Declaration of Rights.</u>**

The Public Officials are absolutely barred from bringing their defamation claims against Mr. Luther.  The Freedom of Speech Clauses of the United States and Maryland Constitutions preclude a viable defamation claim here.

The third-party complaint is nothing more than a "libel on government" suit dressed up as a defamation action.  The First Amendment to the United States Constitution, as applied to the states by the Fourteenth Amendment, guarantees that the government cannot abridge the freedom of speech.  U.S. Const., amend. I.  Similarly, the Declaration of Rights in the Maryland Constitution guarantees that "every citizen of the State ought to be allowed to speak, write and publish his sentiments on all subjects, being responsible for the abuse of that privilege."  Md. Decl. of Rights Article 40.[8]

"For good reason, 'no court of last resort in this country has ever held, or even suggested, that prosecutions for libel on government have any place in the American system of jurisprudence.'  The present proposition would sidestep this obstacle by transmuting criticism of government, however impersonal it may seem on its face, into personal criticism, and hence potential libel, of the officials of whom the government is composed."  *New York Times Co. v.*

---

[8] Although Article 40 and the First Amendment are construed *in pari materia*, *see Chase v. Town of Ocean City*, 825 F. Supp. 2d 599, 626 (D. Md. 2011), Article 40 by its plain language contains positive rights that may provide even broader protection (at least to citizens).

*Sullivan*, 376 U.S. 254, 291–92 (1964) (quoting *City of Chicago v. Tribune Co.*, 307 Ill. 595, 601, 139 N.E. 86, 88, 28 A.L.R. 1368 (1923)).

In *New York Times Company v. Sullivan*, the Supreme Court held that it was unconstitutional to subject a speaker to defamation liability based on the state court's erroneous conclusion that "an otherwise impersonal attack on governmental operations was a libel of an official responsible for those operations." 376 U.S. at 292, 84 S. Ct. at 732.

As the actual statements demonstrate, Mr. Luther never directed his statements to any particular person. The actual statement from the radio show reads: "there's been discrimination per the suit due to the folks being there are of the Islamic faith." *Exhibit 1*, Tr. at 10:18–19. Likewise, the actual statement in the newspaper article generically reads: "'I've never seen such discrimination,' he said. 'It's sickening. I don't know what the heck they are doing.'" *Exhibit 2* at 4. Mr. Luther's statements are not "of and concerning" any particular person and, at most, are nothing more than an impersonal, generic protest against government operations that is not actionable as a matter of law. *New York Times Co.*, 376 U.S. at 292.

The Public Officials are unquestionably public figures who are suing in their public capacity for statements that do not identify them personally and were not directed to any particular person, but rather were generally directed to the governmental entity they serve. After all, the Public Officials are represented by the public resources of the county law department, and they baldly (in derogation of the teachings of *Iqbal* and *Twombly*) allege constitutional malice (*i.e.*, they do not even pretend to allege the standards applicable to a private citizen). For purposes of their defamation claim, therefore, the Public Officials are merely the embodiment of Harford County itself. *See, e.g.*, *Randolph v. Maryland*, 74 F. Supp. 2d 537, 541

(D. Md. 1999).  Therefore, the defamation claims against Mr. Luther are unconstitutional under *New York Times Co. v. Sullivan*.

This defamation claim is a prime example of unconstitutional government action designed to chill and gag free speech.  This entire controversy has become a matter of public interest, and these Public Officials should know better than to file a defamation claim against a citizen who speaks out against government discrimination.

Put simply, as a matter of constitutional law, Mr. Luther's impersonal criticisms of government conduct are not actionable.

> **2.     Mr. Luther's statement during the radio broadcast is not actionable because it is objectively true as a matter of law.**

Truth is an absolute defense to a defamation claim.  *Koren v. Capital-Gazette Newspapers, Inc.*, 22 Md. App. 576, 581, 325 A.2d 140, 143 (1974).  A plaintiff has the burden of proving falsity.  *Davidson-Nadwodny v. Wal-Mart Assocs., Inc.*, No. CCB-07-2595, 2008 WL 2415035, at *4 (D. Md. June 3, 2008) (If a "'plaintiff cannot prove the falsity of a particular statement, the statement will not support an action for defamation.'" (quoting *Spengler v. Sears, Roebuck & Co.*, 163 Md. App. 220, 240, 878 A.2d 628, 640 (2005))).

In response to the radio program's host's question ("And what are you alleging in your suit?"), Mr. Luther answered:

> Well, <u>the suit is certainly public knowledge and we're alleging</u>, you know, that they have, you know, <u>per the suit</u> that they've obstructed business by, you know, pretty much shutting it down, running up dollars and, you know, <u>there's been discrimination per the suit due to the folks being there are of the Islamic faith.</u>

*Exhibit 1*, Radio Statement, Transcript at 10 (emphasis added).

Everything Mr. Luther said is objectively true.  The complaint, a public document, *does* say that there has been discrimination against individuals of the Islamic faith.  ECF No. 1.  Mr.

Luther was asked what the lawsuit says and he accurately answered the question, even twice saying "per the suit."  The notion that a defamation claim can be based on such a response is nonsensical.

Accordingly, this Court should dismiss the Public Officials' defamation claim to the extent it is based on Mr. Luther's statements during the radio broadcast.

### 3.   Mr. Luther's statements in the newspaper article are non-actionable opinion.

"Generally, while facts are actionable as libel, opinions are not."  *Henry v. Nat'l Ass'n of Air Traffic Specialists, Inc.*, 836 F. Supp. 1204, 1214 (D. Md. 1993), *aff'd*, 34 F.3d 1066 (4th Cir. 1994) (citing *Potomac Valve & Fitting Inc. v. Crawford Fitting Co.*, 829 F.2d 1280, 1286 (4th Cir. 1987)).  Although labeling a factual statement as an "opinion" will not invariably bar a defamation claim, "if a statement is not provable as false or is not reasonably interpretable as stating facts, then it cannot form the basis of a libel suit."  *Id.* at 1215 (quoting *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 19–20, 22 (1990) (holding that only an "objectively verifiable event is actionable")); *see also Baltimore Sports & Soc. Club, Inc. v. Sport & Soc., LLC*, 228 F. Supp. 3d 544, 550 (D. Md. 2017) (dismissing defamation action on First Amendment grounds where statement that competitor was an "imitation" of speaker was a "'rhetorical statement' that lacks precision and cannot be 'proven as a true or false statement of fact,'" so could not as a matter of law be defamatory).

Here, Mr. Luther's statement in the *Washington Post* article — "'I've never seen such discrimination,' he said.  'It's sickening.  I don't know what the heck they are doing.'" — is nothing more than a non-actionable opinion.  *Exhibit 2*, Newspaper Statement.  Mr. Luther was merely expressing his own beliefs regarding a matter of public interest and the subject of a publicly filed lawsuit.  These expressions of personal opinions in protest of government action

and about the discrimination that is occurring in Harford County could never form the basis of a

viable defamation claim by Public Officials.  The Public Officials do not, because they cannot,

allege that Mr. Luther has in fact previously seen such discrimination; is in fact not sickened by

it; or really does know what the heck the county is doing.  Indeed, nothing in Mr. Luther's

statement even identifies the Public Officials.  In short, as a matter of law, the Public Officials

could never prove, as is their burden, that anything in Mr. Luther's statement is objectively false.

Accordingly, this Court should dismiss the third-party complaint to the extent it relies on

Mr. Luther's statement in the newspaper article.

### 4.    The Public Officials have failed to satisfy the onerous pleading standard that applies to public figures.

Although the third-party complaint does parrot the words "actual malice," that type of

pleading does not come close to satisfying the onerous requirements applicable to a public figure

when alleging that allegedly defamatory statements were made with actual malice.  Recognizing,

as they must, that they are public figures, the Public Officials rely, albeit only facially, on the

actual-malice standard of intent.[9]  To meet that standard, a plaintiff must, by clear and

convincing evidence, demonstrate that the statement was:

(1) a calculated falsehood or lie knowingly and deliberately published;

(2) the product of the publisher's imagination;

(3) so inherently improbable that only a reckless person would have put it
in circulation; or

(4) published in a situation where the publisher had obvious reasons to
distrust the accuracy of the statement or reliability of the source of the
statement.

---

[9] The Third-Party Complaint confirms that Third-Party Plaintiffs are suing as public officials. *See* Third-Party Compl. ¶¶ 3-5 (alleging that the statements are "defamatory in tending to injure Third-Party Plaintiffs in their profession and employment, and further, in impugning them to be religiously prejudiced and bigoted," and that Mr. Luther made those statements with actual malice).

*Capital-Gazette Newspapers, Inc. v. Stack*, 293 Md. 528, 539, 445 A.2d 1038, 1044 (1982) (citations omitted).

What is *not* sufficient is a mere showing that a statement was "erroneous, derogatory or untrue," *id.* (quoting *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 340–41 (1974)), or that the speaker "acted on a reasonable belief that the defamatory material was 'substantially correct' and 'there was no evidence to impeach the [publisher's] good faith.'" *Id.* at 540, 445 A.2d at 1044 (quoting *New York Times Co.*, 376 U.S. at 286). The existence of actual malice can be established "only on clear and convincing proof." *Stack*, 293 Md. at 539, 445 A.2d at 1044 (quoting *Gertz*, 418 U.S. at 342).

Fed. R. Civ. Proc. 8 and the *Iqbal/Twombly* plausibility standard require that the pleader allege a factual basis for each element of a purported claim. *Crouch v. City of Hyattsville*, No. CIV.A. DKC 09-2544, 2010 WL 3653345, at *5–7 (D. Md. Sept. 15, 2010) (dismissing claims filed *against* government, including defamation claim against prosecutor, for failure to meet pleading standard for actual malice). Thus, a plaintiff must plead actual malice with "a high degree of specificity." *Jones*, 232 F. Supp. 2d at 496 (quoting *Scott v. Jenkins*, 345 Md. 21, 36, 690 A.2d 1000, 1007(1997)).[10] "Conclusory allegations of actual malice are insufficient," and "a plaintiff must 'allege *in detail* in his complaint the facts that indicate the entertainment by the defendant of [an evil motive or intent].'" *Jones*, 232 F. Supp. 2d at 496 (quoting *Jenkins*, 345 Md. at 34, 690 A.2d at 1006).

_____

[10] Subsequent amendments to Maryland Rule 3-305 have, to a limited extent, superseded the Court of Appeals' discussion of that rule's text in *Scott v. Jenkins*. *See, e.g.*, *Hoile v. State*, 404 Md. 591, 610, 948 A.2d 30, 42 (2008) (noting subsequent rules amendment). However, the statement of the law on pleading actual malice in that case retains it full force to this day. *See, e.g.*, *Carbone v. Deutsche Bank Nat'l Tr. Co.*, No. CV RDB-15-1963, 2016 WL 4158354, at *5 (D. Md. Aug. 5, 2016) (holding, based on *Scott v. Jenkins*, that "only conclusory allegations of malice, and no factual allegations" were insufficient as a matter of law).

Third-Party Plaintiffs have not alleged any facts that make it plausible that they could ever show actual malice by clear and convincing evidence. *See, e.g.*, *Freyd v. Whitfield*, 972 F. Supp. 940, 943–44 & n.8 (D. Md. 1997) ("Proving actual malice is a heavy burden. It is insufficient to show that the defendant merely broadcast false statements, or spoke out of ill will." (citing *Bose Corp. v. Consumers Union of U.S., Inc.*, 466 U.S. 485, 511 (1984)). They have alleged nothing to suggest (plausibly or otherwise) that any statement was made without an investigation of the circumstances, was regarding a belief not honestly held, or was made with reckless disregard for the truth, much less subjective knowledge of falsity. *Stack*, 293 Md. at 541-42, 445 A.2d at 1045.

In reality, as set forth above, the statements during the radio program and in the newspaper are expressly based on the information set forth in detail in papers filed in this Court. Because Mr. Luther's statements were based on his understanding of those filings, the statements were not, as a matter of law, made with actual malice. Where the speaker has made even a cursory investigation into the matter, the speaker does not act with "reckless disregard for the truth" or "ha[ve] a high degree of subjective awareness of the probably falsity" of the statements. *Stack*, 293 Md. at 542, 445 A.2d at 1046 (internal quotation marks omitted). Additionally, the Newspaper Statement is, if anything, akin to the "rhetorical hyperbole often [ ] present in vehement debate" in a newspaper editorial that the Court of Appeals of Maryland held by a directed verdict could not show that the speaker acted with actual malice. *Id.* at 541, 445 A.2d at 1045 (citation omitted). To the extent the Public Officials claim that anything Mr. Luther said is "false" (which they could never prove), as the Supreme Court held in *New York Times Co.*, "erroneous statement is inevitable in free debate," and "it must be protected if the freedoms of

expression are to have the 'breathing space' that they 'need . . . to survive.'"  376 U.S. at 271–72.

That is why the actual malice standard exists.  *Id.*

The third-party complaint recites nothing more than the words "actual malice."  *See* ECF

No. 26 at ¶ 5.  But nowhere in the third-party complaint are there any facts to support that bald

allegation.  *Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action,

supported by mere conclusory statements, do not suffice." (citing *Twombly*, 550 U.S. at 555));

*Crouch*, 2010 WL 3653345, at *7 ("Nowhere, however, does [the plaintiff] assert facts sufficient

to show evidence of malice on the part of [the individual prosecutor] or anyone else in the Office

of the State's Attorney.  Plaintiff has therefore failed to state a prima facie case.").

Consequently, this Court should dismiss the third-party complaint.

**B.     The absolute litigation privilege bars the Public Officials' claims.**

Even if anything that Mr. Luther said were "defamatory" (nothing is), Mr. Luther's

statements are protected by the absolute litigation privilege.

The absolute litigation privilege "is an essential component of the adversary system of

justice," and covers "words spoken or written in the course of or in connection to a judicial

proceeding."  *O'Brien & Gere Engineers, Inc. v. City of Salisbury*, 222 Md. App. 492, 509, 511

(2015), *aff'd*, 447 Md. 394 (2016).[11]  "[T]he privilege protects defamatory statements 'even if his

[or her] purpose or motive was malicious, he [or she] knew the statement was false, or his [or

her] conduct was otherwise unreasonable.'"  *Mixter v. Farmer*, 215 Md. App. 536, 543 (2013).

---

[11] The litigation privilege has been applied in Maryland to witnesses since 1888.  *O'Brien & Gere Engineers, Inc.*, 447 Md. at 410.  Witness immunity in Maryland is absolute, but attorney statements must "have some rational relation to the matter at bar" for the privilege to apply.  *Id.* at 411 (quoting *Norman v. Borison*, 418 Md. 630, 650 (2011)).

The privilege applies universally unless a statute indicates that it does not. *Briscoe v. LaHue*, 460 U.S. 325, 330–35 (1983).

"Lawyers are protected by the American version [of the absolute litigation privilege], which immunizes them from liability in tort for words spoken or written in the course of a judicial proceeding so long as the words are relevant to the proceeding." *O'Brien & Gere Engineers, Inc.*, 222 Md. App. at 508, 113 A.2d at 1138 (citing *Norman v. Borison*, 418 Md. 630, 650, 17 A.3d 697 (2011). Lawyers are not the only ones protected by the litigation provision. "Other litigation participants, including witnesses, are protected by the English version of the privilege, which immunizes them from liability in tort for words spoken or written in the course of a judicial proceeding even when the words are irrelevant and incidental." *Id.* at 508, 113 A.2d at 1139 (citing *Hunckel v. Voneiff*, 69 Md. 179, 14 A. 500 (1888)).

This Court has not hesitated to grant a motion to dismiss a defamation claim as a matter of law based on the absolute litigation privilege. *See, e.g.*, *Offen v. Brenner*, 553 F. Supp. 2d 565, 571 (D. Md. 2008), *aff'd*, 334 F. App'x 578 (4th Cir. 2009) (dismissing claim against doctor whose allegedly defamatory report led to administrative sanctions against plaintiff); *Holt v. Camus*, 128 F. Supp. 2d 812, 815 (D. Md. 1999) (dismissing claim and noting, "This so-called judicial immunity is extremely far-reaching."), *aff'd*, 217 F.3d 839 (4th Cir. 2000).

The absolute privilege covers statements made "in the course of judicial proceedings," and "extends also to statements that serve to initiate a judicial proceeding." *Offen*, 553 F. Supp. 2d at 569 (dismissal proper where alleged defamation sparked administrative proceeding with procedural safeguards and served public interest). Thus, merely repeating those statements in the press, as Mr. Luther did, is absolutely privileged. *See, e.g.*, *Norman v. Borison*, 418 Md. 630, 661–64, 14 A.3d 697, 715–17 (2011) ("*Once a document is made public*, Maryland law does not

limit who, where, or the extent to which one may view that document.  Thus, publication of the

by-now public federal complaint does not bar application of the absolute privilege.").  Indeed, in

*Norman*, the Court of Appeals of Maryland held that even before a complaint is filed, alerting the

press and providing a draft copy is not defamatory.  *Id.* at 661, 17 A.3d at 716.

The absolute litigation privilege applies notwithstanding that Mr. Luther did not quote,

verbatim, the facts set forth in the complaint and motion for preliminary injunction.  In this

regard, *Norman*, 418 Md. at 664–65, 17 A.3d at 717–18, is again instructive.  In *Norman*, the

Court of Appeals held that the absolute privilege applies to *out-of-court statements* made by

witnesses, parties, or judges, when (1) the contemplated or ongoing proceeding fulfills the test

for procedural safeguards set forth in *Gersh v. Ambrose*, 291 Md. 188, 434 A.2d 547 (1981), and

(2) the context of the statement demonstrates that it was made "during the course of the

proceeding (*i.e.*, while the putative tortfeasor was participating in the proceeding)."  *Id.* at 657–

58, 17 A.3d at 713.

The "context" for purposes of the absolute privilege analysis includes, among other

things:  "what was the overall or general reason for the instrument or letter (but not the motive of

the challenged statement itself, *see* English rule); what was the defendant doing when he or she

made the statement; and to whom did he or she make the statement."  *Id.*  at 658, 17 A.3d at 713.

Under that analysis, *Norman* held that the absolute litigation privilege protected the

following "sound bites" that attorneys made to the press, after the complaint was filed, about the

pending litigation:

- "[w]e're talking about bad people. . . .  A mortgage foreclosure rescue scam is worse than predatory lending.  They find out how much equity is in the house, and they come at you like vultures."

- "[a]s we kept investigating the case, it became clear that there were also federal charges to be asserted. . . .  Metropolitan Money Store was out stealing the equity in people's homes and on top of that, getting it tax free."

*Id.* at 664, 17 A.3d at 717.  In *Norman*, the Court of Appeals of Maryland affirmed the trial court, which correctly dismissed the defamations claims.  418 Md. at 666, 17 A.3d at 718.  This Court should do the same.

Here, unlike the defendants in *Norman*, Mr. Luther is a non-attorney and, as result, receives even greater protection under the absolute litigation privilege.  *O'Brien & Gere Engineers, Inc.*, 222 Md. App. at 508, 113 A.2d at 1139 (while attorneys' statements must be rationally related to the lawsuit, other participants "are protected by the English version of the privilege, which immunizes them from liability in tort for words spoken or written in the course of a judicial proceeding even when the words are irrelevant and incidental").  Mr. Luther's statements about a federal litigation were made after the complaint and motion for preliminary injunction had been filed, and "in the course of" those proceedings, under *Norman*.  In that "context," under *Norman*, the claims against Mr. Luther must be dismissed by operation of the absolute litigation privilege.

**C.      Conditional privileges bar the Public Officials' defamation claim.**

In addition to the absolute litigation privilege that absolutely protects Mr. Luther's statements, three conditional (or qualified) privileges also bar the Public Officials' defamation claim.  The application of a conditional privilege is a question of law, and a conditional privilege can only be lost if a plaintiff has abused the privilege.  *See, e.g.*, *Bharadwaia*, 2006 WL 2811257, at *14; *Gohari v. Darvish*, 363 Md. 42, 57–58, 767 A.2d 321, 329 (2001).

The Public-Interest Privilege.  The "honest expression of opinion in matters of legitimate public interest" is protected by the public-interest privilege.  *Kapiloff v. Dunn*, 27 Md. App. 514, 536–37, 343 A.2d 251, 265–66 (1975).  Here, the Public Officials' performance of their governmental duties is unquestionably a matter of public concern.  *See A.S. Abell Co. v. Barnes*,

258 Md. 56, 67, 265 A.2d 207, 207, 214 (1970) (the public has a particular interest in

"government employees who have, or appear to have substantial responsibility for or control

over the conduct of government affairs").  Thus, under the public-interest privilege, Mr. Luther's

statements (even if ultimately deemed to be statements of objective fact and not opinion and

somehow proven false) are protected if they were not knowingly false or not published with

reckless disregard of their truth or falsity.  *Kapiloff*, 27 Md. App. at 531−32, 343 A.2d at 262−63

(trial court erred in denying directed verdict; defamation claim should not have been submitted to

a jury).

    Fair-Reporting Privilege.  "Reports of in-court proceedings containing defamatory

material are privileged if they are fair and substantially correct or substantially accurate accounts

of what took place."  *Rosenberg v. Helinski*, 328 Md. 664, 677, 616 A.2d 866, 872 (1992)

(citing, among other cases, *McBee v. Fulton*, 47 Md. 403, 417, 426 (1878)).  "The public's right

to know the business of its courts takes precedence" over any right not to be defamed, as long as

the report is fair and accurate.  *Helinski*, 328 Md. at 687, 616 A.2d at 877 (1992).  The fair-

reporting privilege, "while not absolute, [is] somewhat broader in its scope than other conditional

privileges."  *Id.* at 677−78, 616 A.2d at 872−73 (fair-reporting privilege applied to expert

witness's summary to press of his own testimony).

    Any one of three rationales support applying the fair-reporting privilege to a statement

about ongoing litigation:

> (1) the agency rationale, by which the reporter[12] acts as agent for an otherwise
> preoccupied public which could, if it possessed the time, energy or inclination,
> attend the proceeding;

---

[12] In *Helinski*, in which the Court of Appeals set forth the standard in this quoted passage, the
"reporter" was not an actual media reporter, but a witness who made statements to the press.  328
Md. at 677−78, 616 A.2d at 872−73.  As noted in Section III.B n.5, the law makes no distinction

(2) the public supervision rationale, by which the reporter provides to the larger community data it needs to monitor government institutions;

(3) or the public information rationale, by which the reporter provides information affecting the greater public welfare.

*Id.* at 679, 616 A.2d at 873 (citing, among other cases, *Reuber v. Food Chemical News, Inc.*, 925 F.2d 703, 713 (4th Cir. 1991) (en banc) (holding that newspaper had fair reporting privilege to publish information related to government actions)).

Mr. Luther's statements were made in the context of media reports that described a matter of significant public interest: an ongoing litigation seeking relief against improper government action that has become the subject of vocal public debate.  Mr. Luther merely described the facts presented in public filings.  In this regard, under the rationales set forth above, Mr. Luther was (1) acting as an agent for interested members of the public; (2) a source of information needed by the community to monitor the government; and (3) a provider of information affecting greater public welfare.  *Id.* at 679, 616 A.2d at 873.  Thus, under all three rationales for the fair reporting privilege, Mr. Luther was and is privileged to report, as he did fairly and accurately, on the Complaint and Motion for Preliminary Injunction.

Fair-Comment Privilege.  Simple opinions, which are protected by the fair-comment privilege, include derogatory opinions based on privileged statements of fact.  *Kirby*, 227 Md. at 279, 176 A.2d at 343; *see also Piscatelli v. Van Smith*, 424 Md. 294, 317, 35 A.3d 1140, 1153 (2012) (privilege applied where newspaper article implying that plaintiff was involved in murder was based on facts in court records).  Under the litigation privilege, the Public Officials cannot maintain a viable defamation suit based on the utterances contained in the complaint.  Mr.

---

for defamation purposes between a press "reporter" and non-media "reporter."  *Id.* at 680, 616 A.2d at 874.

Luther, like any concerned member of the public, is entitled to express his opinion and comment upon those facts and, therefore, is entitled to the protection of the fair-comment privilege.

The face of the third-party complaint, as well as the entire statements during the radio program and in the newspaper article, show as a matter of law that all of these conditional privileges apply here.

Having shown that the privileges apply, it is the Public Officials' burden to prove that Mr. Luther abused the privilege.  Older Maryland cases held that a qualified privilege operates as long as the statement is "fair, accurate, and made without malice."  *Helinski*, 328 Md. at 678, 616 A.2d at 873 (citing cases).  More recently, however, "[u]nder the modern view, the privilege exists even if the reporter of defamatory statements made in court believes or knows them to be false; the privilege is abused only if the report fails the test of fairness and accuracy."  *Id.* (citation omitted).

In this case, the Public Officials' claims are fatally defective because the Public Officials have not adequately alleged facts that could show that Mr. Luther abused the applicable privileges.  In *Micrins Surgical, Inc.*, this Court granted a motion to dismiss where "all of the statements made by [defendants] are conditionally privileged under Illinois law, and Micrins has not pled any facts suggesting that [defendant] forfeited this privilege").  2004 WL 1697837, at *5.  The third-party complaint here should meet the same fate.

For the reasons stated in Section IV.A.4 of this memorandum, the Public Officials have alleged no facts that could lead to the plausible inference that they could ever prove that Mr. Luther acted with the constitutional malice required for abuse of any conditional privilege. Neither can the Public Officials ever show, as a matter of law, that the statements were not fair or

accurate.  Therefore, Mr. Luther has shown as a matter of law that he continues to enjoy a

conditional privilege against the Public Officials' claims.

Accordingly, this Court should dismiss the third-party complaint in its entirety.

> **D.**      **The Public Officials' claim for punitive damages fails as a matter of law.**

The Public Officials' claim for punitive damages must also be dismissed.  *Scott v.*

*Jenkins*, 345 Md. 21, 690 A.2d 1000 (1997), observed that properly pleading a claim for punitive

damages is an onerous endeavor, the sufficiency of which is subject to serious judicial

scrutiny.  In *Scott*, the Court of Appeals announced:

> Lest there be any remaining doubt, in order to recover punitive damages in *any*
> tort action in the State of Maryland, facts sufficient to show *actual malice* must be
> **pleaded** and proven by clear and convincing evidence, and a specific demand for
> the recovery of punitive damages must be made before an award of such damages
> may be had.

345 Md. at 29, 690 A.2d at 1003–04 (italics in original; bold-face added).  Furthermore, *Scott*

observed that the recovery of punitive damages depended on the "heinous nature" of the

defendant's conduct.  *Id.* at 31-32, 690 A.2d at 1005.  Thus, an award of punitive damages must

be based on actual malice – which is conscious and deliberate wrongdoing, evil or wrongful

motive, intent to injure, ill will, or fraud.  *Id.* at 33, 690 A.2d at 1006.

The pleading requirements for obtaining punitive damages are strict.  *Id.* at 34-35, 690

A.2d at 1006.  Bald allegations of wanton behavior do not withstand attack on grounds of

insufficiency.  *Id.* at 34, 690 A.2d at 1006.  Much greater specificity is required.  *Id.*  The facts

supporting the defendant's entertainment of an evil motive must be alleged in detail.  *Id.* (quoting

John A. Lynch, Jr. & Richard W. Bourne, Modern Maryland Civil Procedure § 6.5(b)(2)).  A

claim that "may" support punitive damages is simply not good enough.  *Id.* at 35, 690 A.2d at

1006.  Indeed, an award of punitive damages based on an insufficiently pleaded complaint may

render the award constitutionally infirm.  *Id.*, 690 A.2d at 1007.  Thus, *Scott* concluded:

> In sum, in order to properly plead a claim for punitive damages, a plaintiff must
> make a specific demand for that relief in addition to a claim for damages
> generally, as well as allege, in detail, facts that, if proven true, would support the
> conclusion that the act complained of was done with "actual malice."  Nothing
> less will suffice.

*Id.* at 37, 690 A.2d at 1008.

As set forth above in Section IV.A.4, the Public Officials' allegations of actual malice

begin and end with the words "actual malice."  *See* ECF No. 26 at ¶ 5.  The third-party complaint

is patently insufficient under the requirement that claims for punitive damages must be supported

with detailed factual allegations.  Accordingly, this Court should dismiss the Public Officials'

claims for punitive damages.

**V.    CONCLUSION**

For all of these reasons, this Court should dismiss the third-party complaint with

prejudice.

Respectfully submitted,


_____/s/_____
Jeffrey H. Scherr (Bar No.: 01011)
David J. Shuster (Bar No.: 23120)
Ryan A. Mitchell (Bar No.: 29151)
Justin A. Redd (Bar No.: 18614)
KRAMON & GRAHAM, P.A.
One South Street, Suite 2600
Baltimore, Maryland 21202
(410) 752-6030
(410) 539-1269 (fax)
jscherr@kg-law.com
dshuster@kg-law.com
rmitchell@kg-law.com

jredd@kg-law.com

*Attorneys for Third-Party Defendant*
*William R. Luther, Jr.*