IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| OT, LLC, et al., | * | |
| Plaintiffs, | * | |
| v. | * | Civil Action No. GLR-17-2812 |
| HARFORD COUNTY, MARYLAND, et al., | * | |
| | * | |
| Defendants. | | |

\* \* \*

## MEMORANDUM OPINION

THIS MATTER is before the Court on five motions: Third-Party Defendant Fidelity and Deposit Company of Maryland's ("F&D") Motion to Dismiss Counts I, II, and IV of the Third-Party Complaint ("Motion to Dismiss") (ECF No. 155) and Motion to Stay Third-Party Complaint ("Motion to Stay") (ECF No. 179); Third-Party Defendant Old Trail Partnership, LLC's ("OTP") Motion for Judgment on the Pleadings or, in the Alternative, for Summary Judgment ("Third-Party Motion for Judgment on the Pleadings") (ECF No. 194); Fourth-Party OTP's Motion for Summary Judgment ("Fourth-Party Motion for Summary Judgment") (ECF No. 195); and Plaintiffs/Fourth-Party Defendants OT, LLC ("OT") and Gemcraft Homes, Inc.'s ("Gemcraft") Memorandum of Law in Opposition to Fourth-Party Plaintiff OTP's Motion for Summary Judgment and in Support of their Motion for Summary Judgment ("Fourth-Party Cross-Motion for Summary Judgment") (ECF No. 198). The Motions are ripe for disposition, and no hearing is necessary. See Local Rule 105.6 (D.Md. 2018). For the following reasons, the Court will

grant the Motion to Stay; deny the two other Third-Party Motions without prejudice; and deny the Fourth-Party Motions.

## I.     BACKGROUND[1]

In 2004, OTP acquired title to the Property known as the Old Trails Subdivision and thereafter, along with Tousa Homes, Inc. ("Tousa"), sought to develop it. (3d Pty. Compl. ¶¶ 9–10, ECF No. 146). In 2005, OTP entered into a Subdivision Agreement with Defendant/Third-Party Plaintiff Harford County, Maryland (the "County"). (Id. ¶ 11). To obtain building permits, OTP and Tousa were required to sign County-approved PWAs and PWUAs and submit SWM plans to the County, which they did in 2006, and comply with the County's Subdivision Regulations. (Id. at ¶¶ 12–14). OTP sought reapproval of the SWM plans and received new SWM permits several times thereafter, with the last set of SWM permits issued on July 1, 2015. (Id. ¶ 14). To receive the PWAs, PWUAs, and SWM permits, the County required OTP and Tousa to secure the required infrastructure improvements so that the County would not have to pay for them. (Id. ¶¶ 15–16). After procuring eleven bonds totaling approximately $2.2 million from F&D, Tousa posted the

---

[1] Unless otherwise noted, the Court takes the following facts from Defendants/Third-Party Plaintiffs Harford County, Maryland (the "County"), Barry Glassman, Billy Boniface, Melissa Lambert, and Joseph J. Siemek's Third-Party Complaint, (ECF No. 146), and accepts them as true. See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). Capitalized terms retain their definitions from the Court's September 23, 2019 Memorandum Opinion, in which the Court set forth additional facts before resolving certain Motions for Summary Judgment regarding the Amended Complaint. (See ECF No. 217). The Court repeats only facts necessary to resolve the pending Motions.

bonds in March and June 2006 to secure the PWAs, PWUAs, and SWM permits.[2] (Id. ¶ 14). In 2007 and 2008, Tousa built and sold four townhomes in the Old Trails Subdivision and, along with OTP, performed certain road and SWM work. (Id. ¶¶ 17–18). In 2008, Tousa declared bankruptcy and stopped work on the Old Trails Subdivision, and OTP ceased development efforts, without having completed the road or SWM infrastructure for the Subdivision. (Id. ¶¶ 19–20). The County did not declare defaults or call the bonds, noting "[t]he infrastructure in place at that time appeared adequate to serve the four townhomes that had been built." (Id. ¶¶ 21–22).

On or about August 17, 2016, Gemcraft purchased the Old Trails Subdivision from OTP via a Purchase and Sale Agreement (the "Purchase Agreement"). (4th Pty. Compl. ¶ 11, ECF No. 168; id. Ex. 1 ["Purchase Agreement"] at 20, ECF No. 168-1). Article 23.A(1) of the Purchase Agreement provides that the property was to be sold on an "AS IS; WHERE IS" basis and negated and disclaimed any representations, warranties, or guaranties of any kind or character whatsoever. (4th Pty. Compl. ¶ 12; Purchase Agreement at 20). Article 23.C (the "Indemnity Provision") of the Purchase Agreement provided:

> EFFECTIVE AS OF THE CLOSING, [Gemcraft] SHALL INDEMNIFY, DEFEND AND HOLD HARMLESS [OTP] FROM AND AGAINST ANY LOSS, LIABILITY, DAMAGES, COSTS AND EXPENSES (INCLUDING ATTORNEYS' FEES) ARISING FROM OR RELATED TO ANY AND ALL CLAIMS, DEMANDS, CAUSES OF ACTION, JUDGMENTS, LOSSES, DAMAGES, LIABILITIES, COSTS AND EXPENSES (INCLUDING WITHOUT LIMITATION, ATTORNEYS' FEES AND

---

[2] The County notes that the bonds for the PWAs, each of which was for more than $500,000 in June 2006, were reduced to $88,574.44 and $99,683.44 as of November 14, 2007. (3d Pty. Compl. ¶ 15, n.1, n.2).

> DISBURSEMENTS) WHICH ANY HOMEBUYER OR OTHER THIRD PARTY MAY HAVE ARISING FROM OR RELATED TO ANY MATTER OR THING RELATED TO OR IN CONNECTION WITH THE PROPERTY AND ARISING FROM AND AFTER THE CLOSING, WHETHER OUT OF PURCHASER'S USE OR OWNERSHIP OF THE PROPERTY OR CONSTRUCTION ACTIVITIES ON THE PROPERTY OR OTHERWISE, INCLUDING, WITHOUT LIMITATION, ANY CONSTRUCTION DEFECTS, ERRORS OR OMISSIONS IN THE DESIGN OR CONSTRUCTION OF ALL OR ANY PORTION OF THE IMPROVEMENT ON OR TO SUCH LOTS, ANY PHYSICAL, ENVIRONMENTAL, OR OTHER CONDITIONS RELATING TO OR AFFECTING THE PROPERTY (COLLECTIVELY, "CLAIMS") EXCEPT TO THE EXTENT (I) ARISING FROM A BREACH OF ANY REPRESENTATION, WARRANTY, OR COVENANT EXPRESSLY SET FORTH IN THIS AGREEMENT OR IN ANY OF THE DOCUMENTS EXECUTED BY [OTP] AT CLOSING, OR (II) ARISING FROM THE FRAUDULENT MISREPRESENTATION OF [OTP] OR ANY [OTP] RELATED PARTIES. THE DEFENSE BY PURCHASER REQUIRED BY THE ABOVE SENTENCE SHALL BE A FULL AND COMPLETE DEFENSE OF ALL OF THE [OTP] RELATED PARTIES DESCRIBED ABOVE AND THE DEFENSE OBLIGATION SHALL BE EFFECTIVE IMMEDIATELY AFTER A CLAIM IS TENDERED TO [Gemcraft] OR ITS SUCCESSORS OR ASSIGNS.

4th Pty. Compl. ¶ 13; Purchase Agreement at 21). Article 23.D of the Purchase Agreement is entitled "NO CONTINUED RESPONSIBILITY FOR DEVELOPMENT" and states that OTP would, "FROM AND AFTER THE CLOSING . . . HAVE NO RESPONSIBILITY FOR . . . PAYING ANY COST OR PERFORMING ANY OBLIGATION IN CONNECTION WITH THE DEVELOPMENT OF THE PROPERTY OR THE CONSTRUCTION OF . . . OTHER IMPROVEMENTS ON THE PROPERTY." (4th Pty. Compl. ¶ 14; Purchase Agreement at 22). On October 13, 2016, Gemcraft

transferred its interest in the Subdivision to OT, as anticipated and allowed by Article 25.1 of the Purchase Agreement, and with it, Gemcraft's obligations under the Purchase Agreement. (4th Pty. Compl. ¶¶ 15–16). OT closed on the Subdivision Property the same day. (Id. ¶ 18).

Thereafter, the County told OT that it was the County's practice, based on the County Code and Regulations, to require owners who purchase a subdivision with partially completed infrastructure to post new bonds, enter into new PWAs and PWUAs, and obtain new SWM permits. (3d Pty. Compl. ¶ 24). In response, OT demanded that the County call the bonds Tousa posted in 2006. (Id. ¶ 25). The County did not and has not called the bonds. (Id. ¶ 27).

On September 21, 2017, OT and Gemcraft sued the County, two State Delegates—Patrick L. McDonough and Richard K. Impallaria—and four County Officials—Barry Glassman, Billy Boniface, Melissa Lambert, and Joseph J. Siemek (collectively, the "County Officials")—alleging, primarily, violations of federal civil rights laws. (Compl., ECF No. 1). On December 21, 2017, Shades and Springs, Inc. and Ajaz A. Khan joined OT and Gemcraft in filing an Amended Complaint. (Am. Compl., ECF No. 40). The County eventually asked F&D's parent company, Zurich American Insurance Company ("Zurich"), about the status of the bonds and was told that they were "cancelled." (3d Pty. Compl. ¶ 26). On March 15, 2018, Zurich further informed the County that the bonds were "no longer in force and effect" and that F&D would have defenses if the County called the bonds. (Id.).

5

On August 30, 2018, the County and the County Officials (collectively, the "County Parties" filed a Third-Party Complaint against F&D and OTP. (ECF No. 146). In their Third-Party Complaint: the County asserted a claim for express indemnity against F&D (Count I); the County Officials asserted a claim for implied indemnity against F&D (Count II); the County Parties asserted a claim for express and implied indemnity against OTP (Count III); and the County Parties asserted a claim for declaratory judgment against F&D and OTP (Count IV). (3d Pty. Compl. ¶¶ 28–48).

On September 26, 2018, F&D filed its Motion to Dismiss. (ECF No. 155). On October 9, 2018, the County Parties filed an Opposition. (ECF No. 160). On October 17, 2018, F&D filed a Reply. (ECF No. 166). On December 21, 2018, F&D filed its Motion to Stay. (ECF No. 179). On January 3, 2019, the County Parties filed an Opposition. (ECF No. 183). On January 14, 2019, F&D filed a Reply. (ECF No. 184). On February 19, 2019, OTP filed its Third-Party Motion for Judgment on the Pleadings or, in the Alternative, for Summary Judgment. (ECF No. 194). On March 13, 2019, the County Parties filed an Opposition. (ECF No. 201). On April 4, 2019, OTP filed a Reply. (ECF No. 207).

On October 29, 2018, OTP filed its Fourth-Party Complaint, alleging contractual indemnity (Count I) and declaratory judgment (Count II) against OT and Gemcraft. (4th Pty. Compl. ¶¶ 27–34). On February 19, 2019, OTP filed its Fourth-Party Motion for Summary Judgment. (ECF No. 195). On March 12, 2019, OT and Gemcraft filed an Opposition and Cross-Motion for Summary Judgment. (ECF No. 198). On April 4, 2019, OTP filed a Reply. (ECF No. 208). To date, the Court has no record OT and Gemcraft filed a Reply.

## II. DISCUSSION

### A. Motion to Stay

#### 1. Standard of Review

"The power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." Donnelly v. Branch Banking & Trust Co., 971 F.Supp.2d 495, 501 (D.Md. 2013) (quoting Landis v. N. Am. Co., 299 U.S. 248, 254 (1936)). "The party seeking a stay must justify it by clear and convincing circumstances outweighing potential harm to the party against whom it is operative." Hartford Accident & Indem. Co. v. Zurich Am. Ins. Co., No. JKB-19-00593, 2019 WL 3936817, at *3 (D.Md. Aug. 19, 2019) (quoting Williford v. Armstrong World Indus., Inc., 715 F.2d 124, 127 (4th Cir. 1983)). In deciding whether to issue a stay, a district court must "weigh competing interests and maintain an even balance." Mitchell v. Lonza Walkersville, Inc., 2013 WL 3776951, at *2 (D.Md. July 17, 2013) (citing Landis, 299 U.S. at 255). This calculus generally includes consideration of three factors: (1) "the potential prejudice to the non-moving party"; (2) "the hardship and inequity to the moving party if the action is not stayed"; and (3) "the judicial resources that would be saved by avoiding duplicative litigation if the case is in fact stayed." Id.

#### 2. Analysis

F&D argues that: (1) staying the Third-Party Complaint would not prejudice the County Parties because their claims would only accrue after the Amended Complaint is resolved on the merits; (2) requiring F&D to actively defend the Third-Party Complaint,

7

given the clear divide between its claims and the constitutional claims in the Amended Complaint, would be a hardship; and (3) judicial resources would be conserved by first resolving the Amended Complaint because its resolution might moot the Third-Party Complaint. The County Parties counter that: (1) a stay would prejudice them because of a possible time lag and inconsistent verdicts; (2) F&D fails to explain its hardship; and (3) the Third-Party Complaint is governed by Rule 14(a), whose purpose is to conserve judicial resources. The Court agrees with F&D.

Here, the prejudice to the County Parties is minimal because their claims, as they acknowledge, will only accrue if the resolution of the Amended Complaint includes a declaration that the County Parties must build and pay for the remaining infrastructure for the Old Trails Subdivision. The County Parties' concern about a time lag is not convincing because they have declined to declare default or call the bonds for the Subdivision, which means they have themselves paused the claims they make in the Third-Party Complaint. See Hartford Accident & Indem. Co., 2019 WL 3936817, at *4 (noting "with the stay, [non-movants] would not suffer a great burden, only delay"). The County Parties suggest, without elaboration, that there is a risk of inconsistent verdicts, but the Court does not share that concern.

The hardship to F&D, on the other hand, is significant. F&D issued the bonds in 2006 but has had little to do with the Property over the past decade because the County has not called the bonds. Further, there are no allegations that F&D violated any federal civil rights laws, which are at the core of the Amended Complaint. Whether F&D eventually pays the County on the bonds is a determination largely separate from the allegations and

8

claims of the Amended Complaint, yet F&D will have to continue to be involved in this case if the Third-Party Complaint is not stayed. Though OTP did not join the Motion to Stay, it has and will endure similar hardships if the Third-Party Complaint is not stayed. OTP sold the Property before the main events that precipitated the Amended Complaint and yet, based on its disagreement with OT about the scope of the Purchase Agreement's Indemnity Provision, now must defend the Third-Party Complaint. OTP's Fourth-Party Complaint underscores its hardship.

Finally, with respect to judicial resources, the resolution of the Amended Complaint could moot the claims in the Third-Party Complaint. That is, if the County Parties prevail at trial, they would have no need to prosecute their Third-Party Complaint, and the Court can conserve the resources it otherwise would have to spend resolving those claims. A stay would also serve the purposes of Rule 14(a) because, if the County Parties are ordered to pay for the Old Trails Subdivision infrastructure, the Court can simply lift the stay and consider the Third-Party Complaint and the related dispositive motions. The Court concludes that, after considering the competing interests, there are clear and convincing circumstances here that outweigh any potential harm to the County Parties. See Hartford Accident & Indem. Co., 2019 WL 3936817, at *4 ("Because the [related case] is well underway, and because granting a stay would promote judicial economy, the Court will stay proceedings until the [related] case is resolved by settlement or trial.") Accordingly, the Court will grant F&D's Motion and stay the Third-Party Complaint.

9

Because the Court will stay the Third-Party Complaint, the Court will deny without prejudice F&D's Motion to Dismiss and OTP's Third-Party Motion. The Court will now turn to the Fourth-Party Complaint.

**B.** **Fourth-Party Motions for Summary Judgment**

    **1.** **Standard of Review**

In reviewing a motion for summary judgment, the Court views the facts in a light most favorable to the nonmovant, drawing all justifiable inferences in that party's favor. Ricci v. DeStefano, 557 U.S. 557, 586 (2009); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986) (citing Adickes v. S.H. Kress & Co., 398 U.S. 144, 158–59 (1970)). Summary judgment is proper when the movant demonstrates, through "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials," that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a), (c)(1)(A). Significantly, a party must be able to present the materials it cites in "a form that would be admissible in evidence," Fed.R.Civ.P. 56(c)(2), and supporting affidavits and declarations "must be made on personal knowledge" and "set out facts that would be admissible in evidence," Fed.R.Civ.P. 56(c)(4).

Once a motion for summary judgment is properly made and supported, the burden shifts to the nonmovant to identify evidence showing there is genuine dispute of material fact. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586–87 (1986). The nonmovant cannot create a genuine dispute of material fact "through mere speculation

or the building of one inference upon another." Othentec Ltd. v. Phelan, 526 F.3d 135, 141 (4th Cir. 2008) (quoting Beale v. Hardy, 769 F.2d 213, 214 (4th Cir. 1985)).

A "material fact" is one that might affect the outcome of a party's case. Anderson, 477 U.S. at 248; see also JKC Holding Co. v. Wash. Sports Ventures, Inc., 264 F.3d 459, 465 (4th Cir. 2001) (citing Hooven-Lewis v. Caldera, 249 F.3d 259, 265 (4th Cir. 2001)). Whether a fact is considered to be "material" is determined by the substantive law, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248; accord Hooven-Lewis, 249 F.3d at 265. A "genuine" dispute concerning a "material" fact arises when the evidence is sufficient to allow a reasonable jury to return a verdict in the nonmoving party's favor. Anderson, 477 U.S. at 248. If the nonmovant has failed to make a sufficient showing on an essential element of her case where she has the burden of proof, "there can be 'no genuine [dispute] as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986).

When the parties have filed cross-motions for summary judgment, the court must "review each motion separately on its own merits to 'determine whether either of the parties deserves judgment as a matter of law.'" Rossignol v. Voorhaar, 316 F.3d 516, 523 (4th Cir. 2003) (quoting Philip Morris Inc. v. Harshbarger, 122 F.3d 58, 62 n.4 (1st Cir. 1997)). Moreover, "[w]hen considering each individual motion, the court must take care to 'resolve all factual disputes and any competing, rational inferences in the light most favorable' to the party opposing that motion." Id. (quoting Wightman v. Springfield

Terminal Ry. Co., 100 F.3d 228, 230 (1st Cir. 1996)). The Court, however, must also abide by its "affirmative obligation" to "prevent factually unsupported claims and defenses" from going to trial. Drewitt v. Pratt, 999 F.2d 774, 778–79 (4th Cir. 1993) (quoting Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1128 (4th Cir. 1987)). If the evidence presented by the nonmovant is merely colorable, or is not significantly probative, summary judgment must be granted. Anderson, 477 U.S. at 249–50.

### 2. Analysis

In its Motion for Summary Judgment, OTP argues that the Indemnity Provision of the Purchase Agreement, construed in context, requires OT and Gemcraft to defend, indemnify, and hold harmless OTP from any claims against it in this litigation, including those in the Third-Party Complaint. OT counters that the Indemnity Provision only applies to claims that a third-party brings against OTP that "arise from and after" the date of the sale of the Property. Upon consideration of the Indemnity Provision, the Court concludes the language of the Purchase Agreement is ambiguous on this point.

Maryland courts have held that contract interpretation, "including the determination of the ambiguity of a contract," is a question of law. United Servs. Auto. Ass'n v. Riley, 899 A.2d 819, 833 (2006) (citing Towson Univ. v. Conte, 862 A.2d 941, 946 (Md. 2004)). "When interpreting the contract's terms, Maryland courts apply 'an objective interpretation of contracts' and 'look to the entire language of the agreement, not merely a portion thereof.'" Sumanth v. Essential Brands, Inc., No. MJG-17-2450, 2018 WL 558612, at *3 (D.Md. Jan. 25, 2018) (quoting Nova Research, Inc. v. Penske Truck Leasing Co., 952 A.2d 275, 283 (Md. 2008)). "If the contract is unambiguous, the court must give effect to

its plain meaning." Id. (quoting Nova Research, 952 A.2d at 283). A contract is "ambiguous if, when read by a reasonably prudent person, it is susceptible of more than one meaning." Id. (quoting Nova Research, 952 A.2d at 283). "Determining whether language in a contract is susceptible to more than one meaning requires an examination of 'the character of the contract, its purpose, and the facts and circumstances of the parties at the time of execution.'" United Servs. Auto. Ass'n, 899 A.2d at 833 (quoting Calomiris v. Woods, 727 A.2d 358, 363 (Md. 1999)).

Here, the dispute centers on the meaning of these words: "claims . . . arising from and after" the sale of the Property. Considering the entire language of the Purchase Agreement, that operative phrase is susceptible to more than one meaning. The character and purpose of the Purchase Agreement, including its Indemnity Provision, is the transfer of property along with a broad set of related rights and responsibilities. The exact facts and circumstances of the parties at the time of execution are less clear. It is apparent that OTP was motivated to sell the Property in 2016, as its attempt to develop it had stalled when its collaborator, Tousa, stopped work and declared bankruptcy in 2008. It is equally apparent that OT and Gemcraft were interested in taking over the Property, if they could agree to favorable terms with OTP and come to certain understandings with the County. The scope of the Indemnity Provision, based on these circumstances, is not clear. As OTP notes, the language surrounding the Indemnity Provision—"AS IS; WHERE IS" and "NO CONTINUED RESPONSIBILITY FOR DEVELOPMENT"—indicates OTP was extricating itself from the Property. The broad and sweeping language surrounding the operative phrase within the Indemnity Provision supports this reading. However, the Court

must give meaning to each part of the Indemnity Provision, and the operative phrase, "claims . . . arising from and after," limits the extent of OT's contemplated indemnification of OTP.

"Arising" appears in other parts of the Purchase Agreement but not in the same context as in the Indemnity Provision, and the Purchase Agreement does not define the term. The Maryland Court of Appeals has encountered the phrase "obligations . . . arising from and after the Closing" in a purchase agreement but has not explained its meaning. See Appleton Reg'l Cmty. All. v. Bd. of Cty. Comm'rs of Cecil Cty., 21 A.3d 1116, 1120 (Md. 2011). In the context of an exclusionary clause of a business liability policy, the Court of Appeals has explained that "arising out of" means "originating from, growing out of, flowing from, or the like." Red Roof Inns, Inc. v. Scottsdale Ins. Co., 419 F.App'x 325, 334 (4th Cir. 2011) (quoting N. Assurance Co. of Am. v. EDP Floors, Inc., 533 A.2d 682 (Md. 1987)). More recently, the state's intermediate appellate court stated, "[t]he phrase 'arising out of' must be construed on a 'contract by contract or case by case basis.'" Id. (quoting Phila. Indem. Ins. Co. v. Md. Yacht Club, Inc., 742 A.2d 79, 86 (Md.Ct.Spec.App. 1999)).

Under these circumstances, a reasonably prudent person could read "claims . . . arising from and after" the Purchase Agreement to mean either claims filed in court after the Purchase Agreement, as OTP argues, or claims whose basis originates after the Purchase Agreement, as OT argues. In light of that ambiguity, and considering the facts first in the light most favorable to OT and Gemcraft and then in the light most favorable to OTP, the Court concludes, at this stage of the litigation, there is a genuine dispute of

material fact that precludes granting summary judgment in favor of either party. See <u>Money Point Diamond Corp. v. Union Corp.</u>, 998 F.2d 1009 (4th Cir. 1993) (holding "the district court properly found the indemnity provision ambiguous and, therefore, admitted extrinsic evidence to assist in interpreting that provision"). As a result, the Court will deny OTP's and OT's Cross-Motions for Summary Judgment.

## III. CONCLUSION

For the foregoing reasons, the Court will grant F&D's Motion to Stay the Third-Party Complaint (ECF No. 179) and stay the Third-Party Complaint is STAYED pending the resolution of the Amended Complaint. The Court will deny without prejudice F&D's Motion to Dismiss (ECF No. 155) and OTP's Third-Party Motion for Judgment on the Pleadings (ECF No. 194). The Court will deny OTP's Fourth-Party Motion for Summary Judgment (ECF No. 195) and OT and Gemcraft's Fourth-Party Motion for Summary Judgment (ECF No. 198). A separate Order follows.

Entered this 23rd day of September, 2019.

/s/
George L. Russell, III
United States District Judge